We will hear argument next in No. 22-1050, Asetek Danmark v. Vidal. Good morning, Your Honors, and may it please the Court. The crux of this appeal is whether the petitioner stated a prima facie case of obviousness in its petition, as is required by the federal statute 35 U.S.C. 312. This Court's decision in Wasika and Intelligent Biosystems are clear that Section 312 is applied strictly, and then if a petition fails to make out a prima facie case of obviousness in the petition, the petitioner cannot cure that deficiency in the reply brief. I don't think there's any dispute about anything that I just said. Do we review this for a question of law or an abuse of discretion to determine whether the petitioner whether the reply impermissibly added evidence and argument to its rebuttal? Your Honor, that's an interesting question. When you review the case law, I think if I could jump to the end, the analysis comes down to an error of law that was committed by the PTAB in this case because they found that there was a prima facie case of obviousness in the petition when it's not there. That could be context-dependent on, you know, given facts of the case and the particular arguments that were made and how they were argued, whether, in fact, there was an appropriate prima facie case made. I mean, there's no, like, legal question unless it's like literally an element was missing in the opening petition. Your Honor, I'm not trying to avoid the question. The case law is not necessarily clear on the question that you're asking. When it comes to the PTAB's application of its own regulations and rules, that's an abuse of discretion standard. I think one can argue that under 35 U.S.C. 312 in its application, that is a question of law that could be reviewed de novo, particularly in an obviousness scenario like we have here because a conclusion that a petition stated a prima facie case of obviousness is a question of law. It's based on subsidiary facts, as Your Honor just pointed out, but it is ultimately a question of law. I can't cite you any case law that has sort of cleaved the baloney that thin, but I think an argument can be made. But in this case, I don't think it necessarily matters because there was an erroneous decision or an implied decision that the petition stated a prima facie case of obviousness when it did not, and I'm going to explain why a little bit more further. Let me just see if I understand this right. So the petition included a statement that an artisan would be, relevant artisan, would be motivated to reverse the flow in batch elder. That's correct. And it also said one reason for that motivation is found if you look at the displacement pump, and it would be better for the life of that pump if cold water was going in rather than hot water. What's missing, if I understand your argument right, is some further explanation of how you use that pump to reverse the flow. And that's not quite in the petition, and you said in your patent owner response, there's no how, and the reply comes in and says there's a rotor in it, move it this way instead of this way. Change the direction and that will do it. Is that kind of, is that the state of the record? Your Honor, yes, with perhaps one minor correction. The petition stated that there would have been a motivation to reverse the flow in batch elder, and we argued below that that motivation wasn't there, but we haven't appealed on that basis. So accepting that there was a motivation to reverse the flow in batch elder, the petition didn't make the statement about cooling and warming fluid flow, et cetera, that the court just made about pump 280. All the petition said, and it was only half a sentence, it wasn't even a complete sentence. There was a clause, and the petition said, quote, the flow direction could be facilitated by using the pump, open parentheses, e.g. displacement pump 280 disclosed in figure nine in the upper right of batch elder, and that's in the appendix of 537 and 38. That's all it said. And, Your Honor, our position is that's not sufficient. Now, I know that the solicitor is going to argue that it would have been obvious, just as Your Honor implied just a minute ago, it would have been obvious how to reverse the flow, et cetera. I'm sorry. I just want to be clear about something. Yes, sir. I thought the petition does say a posita would be motivated to modify batch elder to allow warm fluid to flow away from the pump rather than towards the pump. That's true, Your Honor. Okay. And you think that's not the same thing as identifying a benefit to the pump? Your Honor, perhaps I'm viewing overlapping issues very distinctly in a way the court is not. I agree that that's a motivation to reverse the fluid flow, and I agree that the petition said that pump 280 could reverse the fluid flow. There's no dispute for me on that. The point is, and this is really the crux of the argument today, the petition said you could use the disclosed pump 280 to reverse the fluid flow, full stop. And it's clear in this court's decisions in WASCA and intelligent biosystems. I just want a complete point because it seems to me, explaining how that would be done and whether there's a benefit are two different things, and I guess I didn't agree. That's correct. I agree, Your Honor. So page 541, a posita would know that heat can negatively impact the life of a pump, such as batch elders pump, and that's in the context of saying it's better if cold water comes in instead of hot water. Your Honor, I agree with all of that. So it's just the how point. Well, two things. And I think the argument on the other side is with a rotary pump, it's self-evident how. Your Honor, they've argued that. Their argument, if I could back up just one moment, the petition said a posita would have been motivated to reverse the fluid flow in batch elder, and you could use the disclosed pump 280 to do that. But it didn't say, number one, that pump 280 would have to be modified from what's disclosed. And it didn't say how it would have been modified. So those are the two missing pieces that weren't in the petition. And I know that the solicitor and our adversary below tried to belittle this argument, but it's clear under WASCA and intelligent biosystems that it's not enough to simply rely on a prior art embodiment or a prior art reference and say, you could use this in a way that a posita would figure out in order to arrive at the claimed invention. If that embodiment must be modified, or if that prior art reference must be modified, first of all, it has to be pointed out, and second of all, the how has to be explained as well. And neither of those things were done in the petition. There's only one clause, and it says exactly what I said just a minute ago. Their argument is, well, it would have been easy for a person of skill and the art to figure that out. You would reverse the rotor, you would reverse the inlets and the outlets, and you would make corresponding changes in batch order, but they didn't do that. And that's not sufficient under the law, Your Honor, and that is our argument. And if you look at the facts in WASCA, they're very analogous to what we're talking about here. In WASCA, the petition argued that Claim 6 was obvious in view of an embodiment, an ozolin, that used a common working frequency. And then the petitioner also made a conclusory allegation, like here, that any difference between ozolin and Claim 6 would have been obvious. But after the patent owner's response pointed out that ozolin wouldn't work the way it was disclosed, that you had to use a different frequency scheme in order to make ozolin work, then... Well, actually, I may have misspoke. The patent owner's response said that the common working frequency disclosed in ozolin wouldn't work, and then the patent owner came in and the reply... Excuse me. I'm getting the parties mixed up. The petitioner came in and the reply and argued, well, then you can look at this other provision, this other section, that wasn't cited in the petition in ozolin, and you could use that to... A person of skill in the art would have realized that you could use a different frequency scheme in ozolin. And no harm, no foul, it's still the same argument. But this court, in this decision, said, no, that's not the same argument. That's a new argument. It actually said that's an entirely new theory. But we don't really have a... We have several cases, I guess, as you describe it, at least Wasikow v. 1, in which what comes in on reply is identification of a portion of the previously cited prior art that had not been relied on in the petition. And that's what we have. This is not even looking at a second piece of prior art. This is Batchelder and the displacement pump. 280 is relied on in the petition, and the direction of the fluid is discussed, and how changing the direction would benefit that pump. This is... The only thing that's missing is, how do you make that pump change the direction? Two things, Your Honor. First of all, that pump 280 would have to be modified. That wasn't stated. And then number two, exactly the point you just made. And it's our position that under this court's precedent, that has to be explained, because that's part of the prima facie case, and you can't fix that later with an argument that, oh, a person of skill in the art could have figured it out. This is how the modification would have been done. And the facts in intelligent biosystems are very similar. I'm running out of time, so I won't go through it. But to address another point that Your Honor just made, there are other cases in which, in a reply brief or in the final written decision from the board, either the petitioner or the board would cite some new art. And there's an Anacor decision that the solicitor has cited, and the solicitor's brief to that effect. But in those cases, the ones I'm familiar with anyway, that prior art was cited to show the state of skill in the art, the knowledge of skill in the art, and how that would have impacted whatever combination was stated. But it didn't change the fundamental underlying combination. It's just that how somebody would have understood it. That doesn't negate the obligation of a petitioner to state that the embodiment or the reference would have to be modified and how it would have been modified. Your Honor, that summarizes our position I have a couple of things to say about our second argument, unless one of Your Honors has any questions about our first argument. Thank you, Your Honor. It's hard to summarize this, but the PTAB made a decision that Asetek's products did not practice the claimed invention based on a misinterpretation of an arrow and a claim chart. The claim chart that the PTAB cited, looking back at it in retrospect, the expert's arrow was ambiguous about where it pointed. The point you just articulated that you were in the process of articulating is a substantial evidence fact point. That's correct, Your Honor. This is a substantial evidence analysis. I recognize that's a very tough mountain to climb or to clear, but we think that under the unique, and I hope these are unique facts in this case, that there is no substantial evidence. If there was only one claim chart, and that's the one that the APJ cited and put in their decision with an arrow that's pointing to the bottom of a groove, I think that we would not be standing here making this argument. But there are two other claim charts that completely corroborate everything that my colleague, who argued this case before the board... Where the arrow goes to the groove and where the red line stops, there's a little hole there, right? Yes. If you look at this 2-dimensional photograph, the end of the groove and that little hole are essentially in the same place because it's a 2-dimensional representation of a 3-dimensional object. The cooling fluid is coming out of that hole? Your Honor, if I could, there's a ceiling that divides the upper part of the pump from the lower part of the pump. The groove that we have always said and was always understood as the passage that divides in a central location. Right. The expert never said the word groove. That's correct. The groove is the relevant passageway. I don't know where we get this word groove from because it's not technically in the record, right? Is this a lawyer term? At a minimum, it was mentioned during the oral argument and it's describing the structure. I understand that part, but I'm just trying to figure out, is the coolant coming out of the little hole? The coolant comes out of the little hole above the groove and then it comes down to the groove and the coolant comes through the groove and it subdivides into 2 different directions and it splits into 2 flows. It's the hole that is in fluid communication with the upper chamber, is that right? The hole is not in fluid communication with the lower chamber and that's the problem. With the upper chamber. That was my question. The fluid is coming from the upper chamber I believe that's correct, Your Honor. out through the little hole where the red line stops. Could you repeat that one more time, Your Honor? The fluid is first in the upper chamber. Correct. Then it comes down into the lower chamber and it's coming out through that little hole. It's not like this groove is one big slot hole where coolant is just rushing out of the entire groove from the upper chamber. The fluid from the upper chamber is coming from that little hole. Your Honor, I would disagree with that. I don't know if there's testimony. Maybe not that word. This point was not fully developed in the record here but to answer the court's question the fluid comes into the upper chamber and it comes down to the lower chamber through that groove. What is connected to the upper chamber? It's that little hole, right? The little hole does empty into the upper chamber but the fluid comes from the upper chamber to the lower chamber through that long groove. But first through the little hole. It's coming from the little hole. If you want to tell me then after it leaves the little hole it somehow fills up that entire groove that's your argument and that's fine. But it actually is the little hole from which the coolant is coming through from the upper chamber. Your Honor, I would change the preposition to say it comes into the upper chamber through that little hole. The fluid is going from the lower chamber to the upper chamber through that little hole? No, Your Honor, the fluid is coming down. Exactly, from the little hole. Your Honor, it comes out through the little hole into the upper chamber and then the fluid goes... I'm sorry, it comes from the little hole into the upper chamber? That's not right. Your Honor, may I? Yeah, take five. Seconds. That's what I'm trying to say. My colleague and I completely agree. With me? No, Your Honor. Perhaps I'm not making myself clear. The transition from the upper chamber to the lower chamber is that groove. That's where the fluid enters the lower chamber. The fluid comes into the upper chamber through that little hole. It's coming from the upper chamber has to get its coolant to the lower chamber through that little hole. This is why you don't win on substantial evidence because you can't clearly convince us that the board is wrong. If you had a playing card, something with width to it, not a needle, you put the needle through the hole. Can you put a playing card through between the upper and the lower chambers? You could through the groove. So the groove is actually fully open on top and bottom between upper and lower? Well, actually, I don't think that's correct because the groove has an entrance point. It's a complicated device, Your Honor. It's not fully in that record. The fluid enters the groove on one side. It enters the groove through the little hole? No, Your Honor, it doesn't. This one's nodding, so I don't understand. It enters the upper chamber through the little hole. It's okay. I won't belabor the point. Your Honor, we should win on the first point for sure. I didn't get to fully elaborate on why we think there's... I'm way over time. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. The petition here set forth a sufficient prima facie case of obviousness, and the reply brief properly elaborated on that exact obviousness ground in response to ASTEC's arguments in its patent owner response. Specifically, the Board did not err in finding, as set forth in the petition, that one of skill in the art would have modified Batch Elder to reverse the liquid flow in the system using the displacement pump that was identified in the petition as Figure 9. That, together with something about benefiting the pump by doing that, is the end of the petition on that. It never says, here's how you do this with the pump. You've changed the direction of the rotor. That's not in the petition. The petition doesn't say you have to hook up the pump and reverse the rotor. No, it does not. The petition says you can use the displacement pump because there's no directionality to the channels. It can go either way. It talks about the motivation to do that because of the pump's life. It also talks about how one would have a reasonable expectation of success because it was a well-known technique to move liquid. The question comes down to, was it an impermissible modification of the obviousness theory? When, on reply, the petitioner said, here's the modifications you would need to do to the displacement pump in order to get the reverse flow of coolant in that shelter. Why isn't that a modification? It's not a modification. It was a response to ASIC's arguments that you would need this wholesale reconfiguration. When you actually talk about the displacement pump instead of the centrifugal pump that they addressed in their patent owner response, I don't know exactly what ASIC means by the modification to the displacement pump. The reply said the modification is you put it into the system. You have to have the inlet and outlet so the water flows through the system. That's not a modification to the pump. It's just putting the pump into the system. Then you reverse the rotor to reverse the liquid's flow. That reply brief is a permissible response to that argument in the patent. I don't have any doubt about that. As we explained in Core Photonics recently, there are two quite distinct limitations on the reply. One, it has to be responsive. This is undeniably responsive. That's not the point in dispute. The point in dispute is the other one, whether the reply introduced something that was impermissible to introduce on reply because it wasn't sufficiently in the petition. That, we said, is actually reviewed as a matter of law. Right. For the standard review, it's true. If the argument is that the board relied on a ground that was not in the petition, that is reviewed de novo. That doesn't purport to simplify the task of deciding what is a new ground and what is something less than a new ground. In Huatika, an intelligent biosystem, there was very clear, this court found, that the ground was new and pointed to new evidence in the prior art. There was a different part of the prior art that was pointed to in order to make the obviousness ground. It wasn't just that any of these modifications would be obvious. Then they actually, in the reply, went to parts of the prior art to point out why there would be the modification. In intelligent biosystem, it was now not only would you use the conditions of the prior art for the sequencing method, but now you had to modify those conditions, they said in the reply. You wouldn't use the conditions that they pointed to in the petition. Here, the petition pointed to, Batchelder's figure two, reversing it using the displacement pump. Everything about what is put in the reply is what one of skill in the art would know about in terms of putting a pump in a system and reversing the liquid flow. It's clear from both Batchelder's disclosure, as well as Ace Tech's own patent, where they all list pumps that you can use in your cooling system. In Ace Tech's patent, you can have the liquid flow in different ways, but none of them provide a user's manual on how to put a pump into a system or where the screws need to go or where everything needs to be put. As the board found, this was all within the knowledge and abilities of one of skill in the art to make these modifications. A petition doesn't have to put in every single step that one of skill in the art would know how to do to make a modification. Otherwise, you're going to end up with an unwieldy petition that the patent owner can always point to something that wasn't the particular, you didn't tell me where to put that screw, I don't know how. There's no evidence in the record that one of skill in the art wouldn't know and wouldn't have a reasonable expectation of success in reversing the liquid flow in this system. So that's why I think even if on a de novo review, the prima facie case was sufficient in the petition and the reply permissible response. What if the petition didn't identify the displacement pump 280 and then the patent owner said, well, they don't explain at all how in the world you would reverse the flow and then on reply the petitioner said, oh, well, it just so happens the reference has displacement pump 280 this is what you would use and this is how you would use it in order to accomplish the motivated objective to reverse the coolant flow. Would that be impermissible? Closer case and I think as the board found here with the viscosity pump, because in their reply they pointed down for the first time to the viscosity pump and said you could change the liquid viscosity pump and the board said no, that in fact was pointing to new evidence. The board didn't rely on that. They said the petition pointed to the displacement pump. I think you could make an argument that just pointing to Batchelder and its different pumps in general that perhaps that would be sufficient. But that's not the case here. The petition specifically set forth the displacement pump if they had an opportunity to respond to that combination in their patent owner response and explain why one of the skilled wouldn't have been able to do it and they didn't actually put that in their patent owner response. So I think if there wasn't the displacement in the petition you could, they would have a very strong argument that that was sort of new evidence that was pointed to in the reply. But because the displacement pump is in the petition and there's discussions about how one of skilled in the art knows how to move liquid around a cooling system in order to dissipate heat and Chen, I think it's Shen was another reference that was relied on for the ability of one of the skilled in the art to perform these methods. That they were well-known techniques. That is sufficient in a petition for the prima facie case of obviousness. What if there were 20 things you had to do to the pump in order to achieve the goal of reversing flow? Then would that be a situation where in the context of that kind of modification it was so complicated and complex that's really not something permissible to say for a reply and needed to be in the petition? I think it would depend on the knowledge of the person of skill in the art. And if all of those 20 steps are something that one of skilled in the art would naturally do when they change a pump perhaps perhaps there are 20 steps, I'm not exactly sure. Then it would be the patent owner and their burden in their response to point out why that wasn't something within the skill in the art and how they wouldn't have a reasonable expectation of success because for whatever reason these modifications were not known here to the skilled artisan with an engineering degree and two years of experience in cooling systems. I think it could be a case where there weren't too many steps, but it would depend again on the state of the art and the knowledge of the skilled artisan. Can you talk about the second issue? If you have anything to enlighten us on what is actually happening in this pump? I don't know what's happening in this pump exactly. I don't want to say enough said. That's possibly enough said. I will point out that if you look in their patent owner response they did point to figure 9 as the embodiment of their products and in that case the inlet 15 is dead center and nowhere close to perfect. It's a little hole. The discussion of a groove is not related to the inlet tube 15. It's called an inlet tube and it is referred to in a way that you would think that it's a little hole. There is no statement about a groove or any of that. The channels are what moves the liquids from the little hole to the other passageway where it goes back into the upper chamber. That's as much of my understanding of how this works. In particular, we don't have enough reason to think that this line shaped thing is like a coin slot. I don't know one way or the other and nothing in the expert report tells me or the board anything other than what the arrow and the little hole points to identifying it as the first passageway. There are no more questions. We'd ask the court to affirm the board's decision. Thank you. I could clarify on the second issue but I think I'm fighting uphill on that one. I would simply like to point out that there's no dispute that pump 280 as disclosed in the Batchelder reference would not reverse the fluid flow. Batchelder nowhere discusses reversing the fluid flow. That's critical to everything that counsel just said. In reversing the rotors and the configuration, etc., the pump 280 to reverse the fluid flow is a lot more complicated than just adding a screw. Unless your honors have any other questions, I'll submit. Thank you. All counsel cases submitted.